UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| RICHARD P. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:21-CV-094-PPS-SLC |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPINION AND ORDER</u>**

Plaintiff Richard P. Miller appeals the Social Security Administration's decision to deny his application, pursuant to Titles II and XVI of the Social Security Act, for disability insurance benefits and supplemental security income (SSI). [DE 1.] His application was denied in the written decision of an Administrative Law Judge, entered following a hearing at which Miller and a vocational expert testified. [*See* AR 22–31.][1] The ALJ determined that, although Miller has COPD and some other more minor health problems, these physical impairments do not conclusively establish disability by meeting or medically equaling the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. [AR 24–26.] Based on her findings as to Miller's residual functional capacity (RFC), age, education, and work experience, the ALJ concluded that he is capable of performing past relevant work and therefore is not disabled within the

---

[1] The administrative record [AR] is found in the court record at docket entry 14, and consists of 517 Bates-stamped pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers in the bottom right-hand corner of each page, rather than the court's Electronic Case Filing page number.

meaning of the Social Security Act. [AR 27–31.]

Miller presents three challenges to the ALJ's decision which he contends warrant reversal: (1) the ALJ failed to properly consider medical opinion evidence from Miller's primary care physician, Dr. Mark Dickmeyer, and Nurse Practitioner Cathy Hakes [DE 16 at 6–8]; (2) the ALJ's RFC assessment was erroneous [*id.* at 8–18]; and (3) the ALJ failed to support the evaluation of Miller's medical symptoms with substantial evidence [*id.* at 18–24].[2] Because substantial evidence supports the ALJ's determination that Miller is not disabled, and the ALJ's decision provides a logical bridge between the record evidence and that conclusion, the decision will be affirmed.

## Background

Back in 2017, Miller filed his first application for Title II disability insurance benefits, claiming that he became unable to work due to a disabling condition on March 15, 2016. [AR 200–06.] Miller had collapsed at work on or about July 15, 2015, but he continued working until some time in March 2016. [AR 25, 244, 248, 264.] After his initial application was denied by the Social Security Administration (SSA) [AR 71–76], Miller elected to file a new application for benefits in 2018 [AR 22, 207–13]. Although in his second application Miller again claimed disability beginning on July 15, 2015, he indicated in a supplemental report that he became unable to work only as of March 22, 2016. [AR 207, 264.] Miller's 2018 application was also denied, initially and upon

---

[2] There were other arguments discussed extensively in the briefing concerning the constitutionality of the Commissioner's decision and the ALJ's failure to develop the record regarding Miller's anxiety and depression. In the reply brief, both of those arguments have been withdrawn by Miller and therefore need not be addressed. [DE 20 at 1.]

reconsideration, based on the finding that he was not under a disability during the relevant period. [AR 22, 77–118.] It is that application that is presently before me.

On August 11, 2020, a telephonic hearing was held before an ALJ. [AR 37–62.] Miller and a vocational expert, Dr. Bruce S. Growick, appeared and testified at the hearing. Miller testified that he was a long-time employee of Dexter Axle, where he worked as a stud drill operator and paint line inspector. [AR 44, 55.] In these roles, he lifted machine parts up to fifty to sixty pounds. [AR 44–45.] Miller testified that he had worked as recently as early 2016 [AR 45], and a work history report reflected that he had worked until March 22, 2016, earning $16.67 per hour for eight hours per day, five days a week [AR 226–29, 275–81]. Since leaving employment in early 2016, Miller supports himself by staying with a family member. [AR 46–47.]

Addressing his physical limitations, Miller testified that his chronic obstructive pulmonary disease (COPD) is the "most severe condition" preventing him from working. [AR 50.] He identified symptoms, such as shortness of breath and fatigue, which limit him to no more than five to fifteen minutes of continuous "walking . . . or general activity," and which prevent him from lifting heavy objects. [AR 50–51, 53–54.] He reported that his respiratory symptoms require him to take a break of up to half an hour after engaging in walking or general activity for up to fifteen minutes. [AR 51.] Miller uses an inhaler and a breathing treatment, Trelegy, one to three times a day, in connection with his respiratory symptoms. *Id.* A treadmill test representative of Miller's physical abilities "didn't last very long." [AR 52.]

3

Miller also reported back pain, which he rated as a "7 or an 8" on a "scale of 1 to 10, on average," when standing. [AR 52.] The pain was exacerbated by physical activity. *Id.* He further testified that he has "on and off" hip pain, which is exacerbated by activities like "bending over, twisting, or . . . taking quick steps." [AR 52–53.] Later in the proceedings, Miller confirmed that he is able to perform tasks like folding laundry, bathing and clothing himself, shopping, and carrying groceries without assistance. [AR 54.]

The VE testified that Miller's former jobs entailed semiskilled (SVP 3) medium work. [AR 56–57.] The ALJ asked the VE whether a hypothetical individual with Miller's age, education, and RFC could perform any of Miller's past work. [AR 57.] The VE found that such an individual could perform Miller's past work. *Id.* The VE noted, however, that a further restriction of Miller's residual capacity to work with an option to sit or stand, changing positions "no more frequently than every 30 minutes while remaining on task" would reduce his exertional capabilities down to the "light level." [AR 57–58.] That adjustment to Miller's RFC, the VE explained, "would exclude the past [medium-level] relevant work." [AR 57–58.] Because Miller could not transfer his existing skills to work at the light exertional level, adopting this additional restriction to Miller's RFC would prevent him from performing his past work. [AR 58.]

A couple weeks after the hearing, the ALJ issued a written decision finding that Miller was not disabled and denying him benefits. [AR 22–31]. After exhausting his administrative remedies, Miller filed a complaint seeking review in this Court pursuant

4

to 42 U.S.C. § 405(g). [DE 1].

### The ALJ's Decision

An ALJ applies a five-step analysis to determine whether a claimant is disabled. *See generally* 20 C.F.R. §§ 404.1520(a)(4). In this case, at step one, the ALJ found that Miller had engaged in substantial gainful activity since his alleged disability onset date, July 15, 2015, noting that Miller had worked through March 22, 2016. [AR 25.] Accordingly, the ALJ's analysis proceeded to step two only for the period after Miller stopped working in 2016. *Id.* Then, at step two, the ALJ considered whether Miller has a medically determinable impairment that is "severe," or a combination of impairments that are "severe." 20 C.F.R. § 404.1520(c). ALJ Winters found that Miller's COPD was a severe impairment but that Miller's other physical conditions—including mild changes in the lumbar spine, mild degenerative changes in his right hip, and obesity—were "nonsevere because they did not require any significant medical treatment and did not result in any continuous exertional or non-exertional functional limitations." [AR 25–26 (citing 20 C.F.R. §§ 404.1509, 416.909; SSR 85-28).]

At step three, the ALJ found that Miller's impairments did not meet or medically equal the severity of one of the applicable Social Security listings. [AR 26 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).] The ALJ considered Miller's COPD under listing 3.02 (chronic respiratory disorders), in conjunction with Miller's other nonsevere impairments and the effects of his obesity. *Id.* (citing SSR 19-2p). Based on her review of the medical evidence of record, the ALJ concluded that Miller

does not suffer from ventilatory flow deficits or a chronic impairment of gas exchange required to render his COPD "severe" under the listing. *See id.* (citing AR 342–97, 423–54, 462, 474, 483–91, 512–17). The ALJ cited a number of medical records in support of this conclusion. Specifically, the ALJ relied upon Miller's 2015 hospital records (reflecting the notes of his treating physicians, Dr. Douglas A. Scott and Dr. Mark Dickmeyer), spirometry tests conducted in 2019, and additional medical records from 2019 (reflecting notes of Miller's treating physician, Nurse Practitioner Caitlin Yoder). These records, in turn, reflect that Miller has not had any COPD exacerbations or complications requiring three hospitalizations in a 12-month period and at least 30 days apart, as required by the listing. Rather, they indicate that Miller's COPD symptoms "wax[ed] and wan[ed]," his "treatment provided significant relief," and he had "moderately severe restriction" to his lung function. [AR 474, 512.]

The ALJ also signaled her agreement with the Commissioner's medical consultants, who had reviewed the medical records and opined that Miller's impairments did not meet or equal a listed impairment. [DE 26 (citing AR 77–94, 97–118).] The evaluations performed by the Commissioner's medical consultants had incorporated, among other documentation of Miller's conditions, "medical evidence of record" (MER) obtained from Miller's primary care physician, Dr. Mark Dickmeyer. [AR 78–80, 88–89, 100–01.] Finally, the ALJ found that Miller presented "no medical opinion to suggest any of [his] physical impairments" satisfy criteria of a SSA listed impairment; and the additional medical records Miller submitted following SSA's initial denial of

benefits failed to persuade her that the SSA medical consultants' "conclusions regarding the listings are incorrect." [AR 26.] Indeed, Miller himself had failed to "argue conformity with a particular listing," reinforcing the ALJ's conclusion based on an independent review of the evidence in the record. *Id.*

Next, at step four, the ALJ determined Miller's residual functional capacity (RFC) which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). She concluded that Miller was able to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), except, in addition Miller can: stand, sit, or walk for six hours (each) out of an eight-hour workday; frequently climb stairs/ramps; balance, stoop, kneel, or crawl; occasionally climb ladders, ropes or scaffolds, or crouch; and must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, dusts, odors, gases, poor ventilation, moving machinery, and unprotected heights. [AR 27–30.]

Finally, at step five, the ALJ found, based on testimony from a vocational expert and considering Miller's RFC, that Miller was capable of performing his past relevant work as a machine operator and inspector. [AR 30–31.] As a result, the ALJ determined that Miller has not suffered a disability within the meaning of the Social Security Act during the relevant period.

## Discussion

I'll start, as customary, with the standards that govern my decision-making in this appeal. My job is not to determine from scratch whether or not Miller is disabled.

Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The "substantial evidence" standard is not a particularly demanding one. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In deciding whether substantial evidence supports the ALJ's decision, I cannot reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). However, a remand is required in those situations where the ALJ has failed to build an "accurate and logical bridge" between the evidence and her conclusions. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

I.      **The ALJ's Evaluation of Medical Opinion Evidence**

Miller asserts that the ALJ failed to properly consider the opinions of two of his treating physicians regarding his physical-health limitations and failed to include those limitations in his RFC assessment. [DE 16 at 6–7 (citing AR 434, 436–37, 440, 442, 444–45, 448–49, 452–53).] His appeal from the ALJ's decision is based in large part on the idea that the ALJ's failure to properly consider these purported "medical opinions" tainted the entire sequential evaluation of Miller's alleged disability. The government responds that this is much ado about nothing, because the cited "statements" from Miller's physicians do not constitute "medical opinion[s]," as the phrase is defined under the

regulations. [DE 19 at 5.] Regardless of whether the records constitute medical opinions, the government argues, the cited records cover only four months, from March and June 2016, and are thus of limited value to the ALJ's ultimate decision. *Id.*

The SSA regulations define a "medical opinion" as:

[A] *statement from a medical source* about *what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions* in the following abilities:

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing pulling, or other physical functions [...];

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2) (emphasis added).[3]

For any medical opinion covered by § 404.1513(a)(2), the ALJ must identify the medical opinion and then weigh the persuasiveness of the opinion pursuant to several factors. 20 C.F.R. § 404.1520c(a), (c)(1)–(c)(5); *id.* § 416.920c(a), (c)(1)–(c)(5) (same). The "most important factors" in weighing medical opinions is whether they are well

---

[3] 20 C.F.R. § 404.1513 applies because Miller's application was filed after March 27, 2017. *See* 20 C.F.R. § 404.1513(a).

9

supported and consistent. *See id.* § 404.1520c(b)(2).[4]

But, of course, this presupposes the existence of a "medical opinion."[5] Under the new regulations, a "medical opinion" is distinct from "objective medical evidence," which concerns "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1); *see also Kernstein v. Kijakazi*, No. 1:20-CV-300-DRL, 2021 WL 5356103, at *3 (N.D. Ind. Nov. 17, 2021). It is also distinct from "other medical evidence," which includes "judgments about the nature and severity of [an applicant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis," but does not include "a diagnosis, prognosis, or a statement that reflects a judgment(s) about the nature and severity of [an applicant's] impairment(s)." 20 C.F.R. § 404.1513(a)(3). As one judge recently put it, in order to constitute a medical opinion under the new SSA regulations, a statement "must satisfy two elements: (1) it must be a statement from a medical source about what [Miller] could still do despite his limitations; and (2) it must express [Miller's] impairment-related limitations or

---

[4] It used to be that an ALJ had to give controlling weight to a medical opinion from a claimant's "treating source," but that rule is no longer applicable to claims, like this one, filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (providing SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [an applicant's] medical sources"); 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017) (abrogating treating source rule).

[5] Because § 404.1513(a)(2) re-defines the phrase "medical opinion" only for applications filed after March 27, 2017, the Seventh Circuit has not yet weighed in on the specific elements of a "medical opinion," beyond the plain terms of the regulation. Nor does it appear that the Court of Appeals has yet weighed in on the distinction (or potential overlap) between "objective medical evidence" and "medical opinion" under the new regulation. In light of this, I am guided by the plain language of § 404.1513(a)(2), cases construing the predecessor definition of medical opinions contained in 20 C.F.R. § 404.1527(a)(1), and the reasoning of district courts parsing whether analogous medical records satisfy the new administrative definition of "medical opinion."

restrictions in terms of his ability to perform certain work demands." *Wallender v. Saul*, No. 20-CV-808-SCD, 2021 WL 734098, at *6 (E.D. Wis. Feb. 25, 2021).

In the absence of a medical opinion, an ALJ has no duty to specifically examine or evaluate treatment and diagnostic documents under the regulatory factors. *Jason M. v. Kijakazi*, No. 1:20-CV-3121-MG-SEB, 2022 WL 2071096, at *5 (S.D. Ind. June 9, 2022); *Kernstein,* 2021 WL 5356103, at *3; *Wallender,* 2021 WL 734098, at *6; *cf. Spies v. Colvin*, 641 F. App'x 628, 636 (7th Cir. 2016) (noting that under previous regulations, where physician opined as to the fact of applicant's ability to work, that statement was "not a *medical opinion,*" and was consequently "entitled to no weight, even coming from a treating physician").

The issue presented is therefore what constitutes a medical opinion to trigger the need for an explicit evaluation by the ALJ. Miller cites treatment "[p]rogress notes" transcribed by Nurse Practitioner Cathy Hakes, which reflect that Miller reported in June 2016 that he was "unable to stand the high temperatures, [and] unable to breathe," and was "still off of work due to his COPD." [AR 452.] Miller's argument is that this is a medical opinion that addresses his "ability to adapt to environmental conditions such as temperature extremes" at work, which is one of the "abilities" on which a medical source may opine. *See* 20 C.F.R. § 404.1513(a)(2)(iv). But this argument misses the point. A medical opinion has to come from a medical source. 20 C.F.R. § 404.1513(a)(2). In other words, just because it is contained in a medical record does not mean it is automatically a medical opinion. *See Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir.

11

2018) (affirming ALJ finding that there was no medical opinion from plaintiff's physician presented by statement that applicant "should not drive if he has hypersomnolence," and noting that ALJ nevertheless considered applicant's sleep apnea and fatigue as part of RFC determination prior to step four); *Everson v. Kijakazi*, No. 21-CV-716-SCD, 2022 WL 3656462, at *7 (E.D. Wis. Aug. 25, 2022) (holding that letter that "recounts [applicant's] diagnosis, some of her subjective complaints, and that she had attended five [therapy] sessions and [had] been referred to outpatient care" failed to "outline any functional limitations or restrictions," and therefore "the ALJ didn't need to address it" as a medical opinion under SSA regulations) *(*applying *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). NP Hakes' recitation appears in the "subjective" section of the medical report. My best interpretation of these notes is that NP Hakes was simply transcribing Miller's "own subjective complaints about his symptoms," and thus the statements do not constitute medical opinions offered by NP Hakes. *Kernstein*, 2021 WL 5356103, at *3 (quoting *Wieczorek v. Colvin*, No. 13 C 4017, 2014 WL 3811015, at *7 (N.D. Ill. July 31, 2014)); *see also Everson,* 2022 WL 3656462, at *7.

Miller also points to NP Hakes' notes about the "[p]lan" for Miller's treatment going forward, which included the observation that Miller had "a note for work," was "referred to [a] pulmonary [specialist]," and received various medications. [AR 453.] These statements are not medical opinions, as that phrase is defined in the regulations, as the statements provide no information about what Miller can still do notwithstanding his objective physical impairments, or whether he has specific

functional limitations in light of such impairments.

The same goes for the second tranche of medical "opinions" flagged by Miller —
Dr. Dickmeyer's "[p]rogress notes" detailing Miller's visits to Parkview Health in
March and April 2016. [AR 434, 436–37, 440, 442, 444–45, 448–49.] As with NP Hakes'
cited statements, Miller points out information that Dr. Dickmeyer jotted down about
Miller's subjective symptoms. For example, Dr. Dickmeyer noted that Miller would "try
to go back [to work] on Friday [AR 434]; and Miller reported "some worsening in his
breathing and wheezing," and was "coughing quite a bit," despite using an inhaler
[AR 436]. Based on my review of the relevant records, those statements are not medical
opinions; they are merely transcriptions of Miller's subjective symptoms, lacking any
connection to his specific functional limitations. *Everson*, 2022 WL 3656462, at *7;
*Kernstein*, 2021 WL 5356103, at *3. Miller also relies on statements from a later visit, at
which Dr. Dickmeyer indicated (again, in the "[s]ubjective" notes section) that Miller's
shortness of breath "occurs constantly," and "has been rapidly worsening." [AR 440.]
Dr. Dickmeyer went on to detail various symptoms, like "chest pain, ear pain, fever
headaches, leg pain, or leg swelling" that were "aggravated by any activity," as well as
Miller's health risk factors, like persistent "smoking." *Id.* Dr. Dickmeyer also noted that
Miller deals with "a lot of paint fumes and dust" and "a lot of heavy lifting at work,"
which respectively "make it hard for him to breathe" and exacerbate his hip and leg
pain. *Id.* Again, these statements are recitations of Miller's subjective symptoms, taken
in by a physician and transcribed in treatment records. They do not appear to be

medical opinions as the phrase is used in the SSA regulations. *Everson*, 2022 WL 3656462, at *7; *Kernstein*, 2021 WL 5356103, at *3. Miller ignores the fact that just a few lines later, under the "[o]bjective" notes heading, Dr. Dickmeyer proceeded to lay out the objective evidence of Miller's medical problems. *Id.* The physician observed that Miller's pulmonary effort was "normal," and while he had "wheezes," he had "no decreased breath sounds" and "no rhonchi." [AR 440.]

In sum, after stripping away Miller's broad characterizations of the cited medical records and examining what they actually say, I am not persuaded that the cited statements constitute medical opinions under the new administrative definition. Accordingly, the ALJ had no obligation to acknowledge or evaluate these statements from Dr. Dickmeyer and NP Hakes under 20 C.F.R. § 404.1520c. Because I conclude that the cited statements fall outside the administrative definition of medical opinions, I do not need to reach the parties' other arguments on this point. I will note, however, that ALJ Winters does not appear to have ignored the cited evidence. As previously outlined, in explaining her findings at steps three and four of the required sequential analysis, the ALJ did cite to and consider the pertinent records. [*See* AR 26–28.] While it may not "address in writing every shred of evidence," the ALJ's explanation strikes me as more than sufficient to "minimally articulate" her findings, particularly in light of the separate opinions of the Commissioner's consulting physicians. *See Winkelman v. Saul*, 835 F. App'x 889, 891–92 (7th Cir. 2021) (citing *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012)).

II.    **The ALJ's Assessment of Miller's Residual Functional Capacity**

Miller's next argument is that the ALJ applied a RFC assessment that failed to account for his COPD and musculoskeletal impairments, and as a result, posed a flawed hypothetical to the vocational witness that overstated Miller's residual capacity to work. [DE 16 at 8–18.] According to Miller, his RFC should be limited to performing light work. The government responds that substantial evidence supported the ALJ's findings as to Miller's functional limitations and his resulting RFC. [DE 19 at 4–7.]

As with the first argument, Miller points the favorable transcriptions of his medical symptoms reflected in his 2016 treatment records. He asserts that the ALJ was required to "confront" these medical records, which he claims "substantiat[e] that [his] breathing problems and his right hip leg [*sic*] pain resulted in his inability to return to his job at Dexter Axle." [DE 16 at 8–9, 11.] But, for the reasons I stated above, the ALJ was not obligated to specifically acknowledge or evaluate these treatment records. And they were but one aspect of a much larger medical history the ALJ took in along with Miller's live hearing testimony. As the ALJ stated, her finding as to Miller's residual functional capacity was based on "the objective medical record, clinical findings, and [the] State agency assessment" — all of which speak more directly to Miller's objective functional limitations. [AR 30.] Thus, Miller's argument—that the ALJ's failure to "confront" this line of evidence renders her assessment of his RFC erroneous—falls far short of demonstrating that the ALJ's decision was not supported by substantial evidence.

Upon review of the objective medical records, clinical findings, and the reports of agency consulting physicians, I conclude that the ALJ supported her finding that Miller can perform medium work (with certain postural and environmental limitations) with substantial evidence. [AR 27–29; *see also* AR at 28 (summarizing relevant Miller testimony from telephonic hearing).] In particular, the ALJ found persuasive the opinion of physician Dr. Brill, who reviewed the medical evidence of record on an initial inspection and opined that Miller could perform activities consistent with medium work, accounting for certain postural, pulmonary, and hazard limitations. [AR 30 (citing AR 97–118).] While an earlier report from an agency medical consultant had concluded that Miller could perform a full range of medium work without postural or pulmonary limitations [AR 77–94], the ALJ found that opinion inconsistent with Miller's medical records, and thus arrived at a more less aggressive RFC — one that accounted for his COPD, as well as an additional limitation ("occasional crouching") to address his complaints about lower-body pain. [AR 30.]

Miller's arguments to the contrary have a shotgun feel to them. [DE 16 at 10–16.] But at bottom, all of the arguments simply rehash the ALJ's resolution of competing medical evidence in the record. Over the course of nearly four single-spaced pages, the ALJ built a bridge between the record and her RFC assessment. [AR 27–30.] Where the ALJ has reasonably resolved competing evidence of record and builds a logical bridge in her written decision between that evidence and the result, it is not my role to play backseat driver. *See Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) (noting that

16

"resolution of competing arguments based on the record is for the ALJ, not the court").

In particular, Miller attacks the ALJ's adoption of the medium-level work RFC based on Dr. Brill's finding that Miller's treadmill test stopped due to fatigue at "4.6 METs," while another report from Miller's treating physician stated that his treadmill test never went beyond stage one (walking at the lowest incline). [DE 16 at 12–13 (citing AR 105, 509, 512).] The ALJ was evidently aware of and incorporated this competing evidence into her assessment of Miller's RFC, as she acknowledged that Miller exhibited dyspnea and fatigue during his stress test. [AR 29 (citing AR 507–11).] However, she also noted that the evidence largely reinforced the conclusion that Miller's COPD symptoms waxed and waned over time and did not support the level of symptoms that Miller alleged at the telephonic hearing. [*Id.* ("Overall, the evidence of record does not fully support the degree of functional limitations the claimant asserts."); *see also* AR 423–60, 512–17.]

This is simply another way of saying the ALJ resolved the evidence differently than Miller would have hoped. Miller makes various other arguments that Dr. Brill's findings ignored other, contrary evidence in the record, and so the ALJ erred when she adopted his findings as part of her RFC assessment. But again, those arguments are more properly directed to the ALJ in the first instance. I am not persuaded that Miller has identified any defect in the ALJ's logical bridge as to render it structurally deficient.

III.   **The ALJ's Evaluation of Miller's Medical Symptoms**

Miller's final argument is that the ALJ failed to support the evaluation of his

17

medical symptoms with substantial evidence. [DE 16 at 18–24.] The government responds that the ALJ properly considered Miller's allegations of subjective disability and declined to credit them. [DE 19 at 7–9.] The Seventh Circuit has held that where "an ALJ gives specific reasons supported by the record, [the court] will not overturn his credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).

ALJ Winters went through the required two-step process to evaluate Miller's symptoms. [AR 27.] First, she considered whether Miller had an underlying medically determinable physical or mental impairment—*i.e.*, an impairment that could be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce his pain or other symptoms. 20 C.F.R. § 404.1529(a). Second, after answering the first question affirmatively, the ALJ evaluated the intensity, persistence, and limiting effects of Miller's symptoms to determine the extent to which they limit his work-related activities. *Id.* § 404.1529(b). In so doing, the ALJ found that the symptoms did not occur with "such frequency, duration, or severity as to reduce [Miller's RFC] . . . or to preclude all work activity on a continuing and regular basis," and the record did not contain "sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by [Miller]." [AR 28.]

Here's some of the explanation the ALJ provided for that conclusion. Initially, Miller filed for disability benefits dating back to July 2015, but he kept working through 2016. When he came back to work, he had some flare-ups with COPD symptoms. After

experiencing exacerbated symptoms after leaving work in April 2016, Miller provided

no evidence of "frequent emergency room treatment or hospitalizations due to COPD

symptoms . . . since that time." *Id.* Miller's argument on this point speaks past the

issue: what is relevant is not his "exemplary work history," but rather the date he

alleged the onset of his disability and his volitional act of returning to work during that

relevant period of alleged disability. Miller's work activity undermined his assertion

that his subjective symptoms prevented him from working altogether; and he did not

seem to have frequent or severe COPD issues in the period when he was at Dexter Axle

or after leaving due to some flare-ups. *Id.*

Second, Miller received a referral to see a pulmonary specialist all the way back

in 2016. There is ample evidence that Miller remained a chronic smoker at least through

July 2019 and had significant gaps in his treatment history; there is no evidence that

Miller ever sought treatment from a pulmonologist. [*Id.*; *see also* AR 452–53, 455–60, 485,

496.] As the ALJ reasonably concluded, these factors bear against the credibility of

Miller's allegations of subjective disability. Miller asserts that the ALJ did not show her

work, and thus must be reversed, because she took notice of the fact that he was

honorably discharged from the military and figured that his status as a military veteran

"would have provided additional options for any required treatment." [*See* DE 16 at 20;

AR 28.] This argument is untenable in light of the record evidence. Not only is it

reasonable to assume that the VA could have provided additional medical support, but

the medical records upon which Miller chiefly relies in this appeal specifically state that

he was "*referred to*" a pulmonologist by his treating physician. He came back to his physicians, albeit without any regularity, reinforcing his awareness of treatment options. If Miller chose not to follow through on this advice, the ALJ was within her discretion to incorporate that information into her evaluation of his subjective symptoms at step two of the two-step analysis outlined above. I find no error on this front.

Third, and relatedly, even though Miller refused to stop smoking until 2019, his oxygen and oxygen saturation levels did not vary considerably between 2016 and 2019 diagnostic tests. [AR 452, 513.] His May 2019 consultative physical examination also reflected normal breathing sounds. [AR 462–74.] Finally, the ALJ discounted Miller's statements about the intensity, persistence, and limiting effects of his symptoms because his testimony was not consistent with the underlying medical records. Here, too, the ALJ supported her findings with substantial evidence reflecting that Miller's pulmonary function tests and examinations varied considerably over the relevant period and did not remain at a level of severity consistent with Miller's subjective description of his symptoms. [*See* AR 29.]

For all these reasons, substantial evidence supported the ALJ's conclusion that although Miller does have underlying medically determinable impairments that could reasonably cause some symptomatology, the severity of the pain and degree of functional limitations Miller alleges are not substantially supported by objective medical evidence of record. Thus, on this point as well, the ALJ's decision will stand.

20

**Conclusion**

The ALJ sufficiently articulated her findings and conclusions to permit meaningful judicial review, so a remand is not warranted for lack of explanation. And after consideration of each of Miller's assertions of error, I conclude that substantial evidence supports the determination that Miller is not disabled, and the ALJ's decision provides a logical bridge between the evidence and the result. *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

Therefore, the final decision of the Commissioner of Social Security denying Plaintiff Richard P. Miller's application for disability benefits and supplemental security income is **AFFIRMED**.

The Clerk shall enter judgment in favor of the defendant Commissioner and against Plaintiff Richard P. Miller.

**SO ORDERED.**

ENTERED: September 29, 2022.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT